IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


**WAYNE L. BARBER,**　　　　　　　　　　　　　　　CV 04-710-BR

　　　　**Plaintiff,**　　　　　　　　　　　　　　　**OPINION AND ORDER**

**v.**

**JOANNE B. BARNHART, Commissioner,**
**Social Security Administration**

　　　　**Defendant.**


**DAVID W. HITTLE**
Swanson, Lathen, Alexander & McCann
Suite 1000
388 State Street
Salem, OR  97301
(503) 581-2421

　　　　Attorneys for Plaintiff

**KAREN J. IMMERGUT**
United States Attorney
**CRAIG J. CASEY**
Assistant United States Attorney
1000 S.W. Third Avenue
Suite 600
Portland, OR  97204-2902
(503) 727-1024


1 - OPINION AND ORDER

**LUCILLE G. MEIS**
Office of the General Counsel
**DAVID M. BLUME**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue
Suite 2900 M/S 901
Seattle, WA  98104-2156
(206) 615-2212

      Attorneys for Defendant

**BROWN, Judge.**

     Plaintiff Wayne Barber seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Barber's protective application for Disability Insurance Benefits (DIB) and found Barber ineligible for Supplemental Security Income (SSI) payments.  Barber seeks an order reversing the decision of the Commissioner and remanding this action to the Commissioner for consideration of the limitations caused by Plaintiff's borderline intellectual functioning and Somatoform Disorder.

     This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a thorough and careful review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence six of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

**ADMINISTRATIVE HISTORY**

Barber filed his applications for DIB and SSI on May 9, 2000. The applications were denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on October 28, 2002. At the hearing, Barber was represented by an attorney. Barber; John B. Nance, M.D., a medical expert; and a vocational expert (VE) testified at the hearing.

The ALJ issued a decision on December 18, 2002, in which he found Barber was not entitled to benefits. That decision became the final decision of the Commissioner on May 26, 2004, when the Appeals Council denied Barber's request for review.

**BACKGROUND**

**I. Barber's Testimony**

Barber was born on August 14, 1950, and was 52 years old at the time of the hearing. Tr. 63, 355.[1] He completed high school. Tr. 355. His past relevant work was as a cook. Tr. 355.

Barber was in the Army from 1969-72, and he served in Vietnam during that time. Tr. 357. Barber then enlisted in the

---

[1] Citations to the official transcript of record filed with the Commissioner's Answer on September 13, 2004, are referred to as "Tr."

3 - OPINION AND ORDER

Air Force, where he served as a cook from 1972-90.  Tr. 357.
Barber testified he also worked as a cook at Marion County Jail
and at a restaurant after he left the Air Force.  Tr. 358.

Barber testified he suffers from chest pains, "wavy vision,"
shortness of breath, numbness on either side of his body, post-
traumatic stress disorder (PTSD), chronic testicular pain, and
leg pain.  Tr. 356, 360-61, 368, 370-71, 373.

Barber testified he cleans his RV, does dishes, and helps
people "clean up their place[s]" by hauling metal, plastic, or
other recyclables off their property to be recycled.  Tr. 363.
Barber makes between $50 and $100 per month recycling, and he
handles his own checking account.  Tr. 364, 369.

Barber also testified he does his own shopping, drives a
car, and hunts deer with his brother once a week during deer
season.  Tr. 365-66.

## II. Medical Evidence

Except when noted below, Barber does not challenge the ALJ's
summary of the medical evidence.  Barber, however, contends the
ALJ did not properly determine his residual functional capacity
(RFC) and did not adequately develop the record with respect to
Barber's possible Somatoform Disorder.

After carefully reviewing the medical records, this Court
adopts the ALJ's summary of the medical evidence.  *See* Tr. 23-25.

**STANDARDS**

A claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests on the claimant to establish his disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039. The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## DISABILITY ANALYSIS

I.  **The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). *See also* 20 C.F.R. § 416.920. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Yuckert*, 482 U.S. at 140. *See also* 20 C.F.R. § 416.920(b).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant has no "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. § 416.920(c).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. § 416.920(d). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments).

If the Commissioner proceeds beyond Step Three, she must

assess the claimant's RFC. The claimant's RFC is an assessment of the sustained, work-related activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 416.945(a). *See also* Social Security Ruling (SSR) 96-8p.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. § 416.920(e).

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. § 416.920(e), (f). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42. *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(f)(1).

**II. The ALJ's Decision**

Here the ALJ found Barber had not performed any substantial gainful activity since his alleged onset date of January 26,

2000. Tr. 28. The ALJ determined Barber has depression, PTSD, "a pain disorder associated with both psychological factors and medical condition [*sic*]," a learning disorder "or borderline intellectual functioning," alcohol abuse in remission, and migraine headaches. Tr. 28. The ALJ, however, found these impairments do not meet or equal the listed impairments. Tr. 28.

The ALJ determined Barber had moderate limitations in following detailed instructions, in maintaining attention and concentration for extended periods, in interacting appropriately with the public, and in independently formulating plans and goals. Tr. 28. At Step Five, the ALJ determined Barber had no exertional limitations. Tr. 29. The ALJ concluded Barber could perform work as a food-preparation worker, tray-setter in schools and airlines, and attendant or sorter in a recycle center. Tr. 29.

## DISCUSSION

Barber contends the ALJ erred when he: (1) failed to consider the limitations caused by Barber's Somatoform Disorder when assessing Barber's RFC, (2) failed to develop fully the record regarding Barber's Somatoform Disorder by not ordering additional psychological testing as suggested by the medical expert, and (3) failed to provide a complete and accurate hypothetical to the VE.

8 - OPINION AND ORDER

I.   **Barber's Somatoform Disorder**

On August 4, 2000, Jerome S. Gordon, Ph.D., conducted a psychodiagnostic examination of Barber consisting of a clinical interview. Tr. 122-26. From that examination, Dr. Gordon concluded Barber was "likely to have difficulty remembering even simple instructions at times." Tr. 125. Dr. Gordon noted Barber could benefit from continued treatment with a psychiatrist and more intensive counseling regarding issues of depression and PTSD. Tr. 126. Finally, Dr. Gordon noted, "As no medical records were included, it is difficult to determine if there is a Somatoform Disorder present, such as a pain disorder or somatization disorder." Tr. 126. Dr. Gordon diagnosed Barber with a recurrent major depressive disorder, PTSD, "(Rule out) Somatoform Disorder," and "(Rule out) Borderline Intellectual Functioning." Tr. 125. Dr. Gordon assessed Barber with a GAF of 53.[2]  Tr. 125.

Although this is the only mention of possible Somatoform Disorder in the medical record, Dr. Nance, the medical expert, testified at the hearing:

> I'd first like to consider item eight, insufficient evidence. And the reason I bring

---

[2] The GAF scale is used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100. *Diagnostic and Statistical Manual IV* 30-32(DSM-IV)(4th ed. 2000). A GAF between 51 and 60 indicates moderate symptoms or moderate difficulty in one or more of the major areas of functioning. DSM-IV at 32.

9 - OPINION AND ORDER

> this up as an issue is we do have a psychological
> and veteran's records but the psychological is
> dated eight of 2000. And there's two rule out
> diagnoses given in that, somatoform and borderline
> intellectual functioning. And, you know, I think
> that a more current evaluation sir would put us in
> much better order.

Tr. 377. Later Dr. Nance noted the Somatoform Disorder was "a current rule out diagnosis, which means that a psychologist is placing it there because he feels that it needs to be investigated further . . . [but] there is no testing to support that psychological evaluation beyond the mental status examination." Tr. 383. Dr. Nance also disagreed with the ALJ's statement that the ALJ "couldn't really refer [Barber] for testing and expect that to come back with anything that's going to help us." Tr. 384.

When questioned by Barber's attorney, Dr. Nance explained individuals with Somatoform Disorder feel physical symptoms as though they exist even though they may not have a medical explanation. Tr. 387. Dr. Nance noted these feelings of pain are "nonvolitional," and the individual with the disorder would be limited by these perceived pains as if they emanated from physical causes. Tr. 388. Notwithstanding Dr. Nance's testimony, the ALJ declined to refer Barber for further testing and evaluation of a possible Somatoform Disorder.

An ALJ has broad discretion to decide whether to order a consultative examination and need only do so if the record is

10 - OPINION AND ORDER

incomplete or insufficient to render a decision. *See Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001). The ALJ, however, has a duty to develop the record fully and fairly. *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2001).

The medical expert in this case thought there was insufficient evidence as to a possible Somatoform Disorder and recommended further testing. The Court agrees.

Although the record reflects Dr. Gordon's "rule out" diagnosis of Somatoform Disorder in August 2000, no further testing or evaluations were present in the record to indicate whether Barber has a Somatoform Disorder that might limit his exertional abilities. The Court, therefore, finds the ALJ failed to develop the record fully as to Barber's possible Somatoform Disorder. Accordingly, the Court concludes the record was insufficient for the ALJ to adequately assess Barber's RFC.

**II. The ALJ's Hypothetical to the VE**

At the hearing, the ALJ proposed the following hypothetical to the VE:

> I'd like you to consider a hypothetical individual who's 52 years old, with a high school education and work as [an institutional cook]. He has moderate limitations following detailed instructions, maintaining attention and concentration for extended periods, interacting appropriately with the public and independently formulating plans and goals.

Tr. 392.

The VE maintained Barber would be able to perform work as a

11 - OPINION AND ORDER

food-preparation worker, a tray-setter, and an attendant or sorter in a recycling center. Tr. 392-93. Barber, however, contends the ALJ's hypothetical does not include the physical limitations caused by his Somatoform Disorder and, therefore, the VE's conclusions have no evidentiary value. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The Commissioner contends the ALJ considered Barber's possible limitations from a Somatoform Disorder by placing limitations on Barber's persistence and pace.

As noted, the Court has concluded the ALJ failed to develop the record properly with respect to Barber's possible Somatoform Disorder and the physical limitations that might result from Barber's legitimately perceived levels of pain if he suffered from a Somatoform Disorder. The Court, therefore, cannot determine whether the ALJ's hypothetical to the VE included all of Barber's limitations and restrictions as required. *See Embry v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)("Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant, including, for example, pain and an inability to lift certain weights." (Citations omitted)).

Accordingly, the Court concludes the ALJ must reevaluate whether Barber is able to do any jobs that exist in significant numbers in the economy after reexamining whether Barber has

exertional limitations due to a Somatoform Disorder.

**III. Remand for Further Proceedings Is Required**.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *See id*. at 1178 n.2.

As noted, the Court finds the ALJ failed to develop the record as to Plaintiff's possible Somatoform Disorder. Because this determination will require further development of the record, it is not clear whether Barber is entitled to benefits. Accordingly, the Court finds remand for further proceedings is appropriate. *See Schneider v. Comm'r*, 223 F.3d 968 (9th Cir. 2000). *See also Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998)("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits"); *Rodriguez v. Bowen*, 876 F.2d 759, 763

13 - OPINION AND ORDER

(9th Cir. 1989)(if remand for further proceedings would only delay the receipt of benefits, judgment for the claimant is appropriate).

Based on this record, the Court remands this matter to the Commissioner for further proceedings.

## **CONCLUSION**

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence six of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 8th day of April, 2005.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge

Barber CV 04-710 O&O.4-5-05.wpd